## The Narragansett.

*(Circuit Court, D. Connecticut.   December 2, 1881.)*

1. Collision—Neglect to Exhibit Torch.
    Where a schooner and a steam-vessel are approaching each other in the night-time, and in danger of collision, it is the duty of the schooner to show a lighted torch upon that point or quarter to which such steam-vessel is approaching, (Rev. St. § 4234,) whether from in front or from abaft, and a neglect to do so will defeat a recovery in case of collision.

2. Same—Side Lights Must be Brightly Burning.
    Where a schooner suffered her red and green lights to become so obscured by oil and smoke as not to be distinguishable as other than a colorless light, instead of being brightly burning and visible, on a dark night with a clear atmosphere, at a distance of at least two miles, (Rev. St. § 4233, rule 3,) it is contributory negligence in the schooner, which will defeat a recovery in case of collision.

3. Same—Neglect to Keep Lights in Order.
    In such case, where an approaching steamer mistakes such colorless light for a binnacle light on a vessel going the same way as the steamer, it is not negligence on the part of the steamer.

*Samuel L. Warner,* for libellants.
*Thomas M. Waller,* for claimant.

BLATCHFORD, C. J. A consideration of the proofs in this case, as well the additional proofs taken in this court as those found in the apostles, leads me to the same conclusion arrived at by the district court, that no fault is shown on the part of the Narragansett, and that the libel must be dismissed. The district judge found that the schooner's green and red side lights were properly set,—that is, set in their proper places and properly screened, the green on the starboard side and the red on the port side,—and that they were burning. He did not find that they were burning properly. On the contrary, he finds that the master and the lookout of the steam-boat were on the watch for lights, and were careful and vigilant, and were in exercise of due diligence, and yet did not see any light on the schooner till close upon her; that if the lights on the schooner had been visible those persons could have seen them, and that the lights were not capable of being seen.

He also finds that there was nothing in the condition of the atmosphere to prevent the steamer from seeing the schooner's lights. I concur in those conclusions. The statute (Rev. St. § 4233, rules 3 and 8) requires not only that sail-vessels under way shall carry a green light on the starboard side and a red light on the port side, but that those lights shall be "of such a character as to be visible on a dark night, with a clear atmosphere, at a distance of at least two miles." It is very plain that the schooner's lights did not meet such requirement. They may have been burning, and visible to those on the schooner's deck, but for some cause, not at all connected with the vigilance or watchfulness of those on board of the steam-boat, the schooner's lights were not seen by them. The district judge said that without undertaking to find affirmatively why the lights were not visible, he found simply that the steam-boat was in the exercise of due diligence, and that the lights were not capable of being seen, and that for that fact he relied much on the appearance and manner of the master of the steam-boat, which impressed him favorably, and that the master was for several hours continuously before the collision in the pilot-house in attendance upon his duty, and that it was his business and duty to look out for lights, and that there was no inducement to be negligent, but every motive to be careful.

These considerations lead me to a concurrence with the district judge. The master of the steam-boat was using a glass all the time to search for lights. The glass of the schooner's green lantern was broken in the collision. The master of the steam-boat found a bit of it, and says that he considered it badly smoked up; that it was damp

and greasy; and that if all of the lantern was in that condition it was not fit to emit light. The green light was the one which the steam-boat would have seen if the schooner was on the course claimed by the schooner. Kerosene was burned in the schooner's lights. No light from her was visible to the two persons in the pilot-house of the steam-boat, or to the bow watchman of the steam-boat, until the steam-boat was close upon the schooner; and then what appeared to be a dim, colorless light on the schooner was seen by those on the steam-boat. The light, not being seen to be green or red, was taken to be a binnacle light in the cabin of a vessel going the same way with the steam-boat. The bow watchman of the steam-boat says that a kerosene lamp will naturally get blurred on the top; that while a smoked green lantern would seem green near at hand, it might seem without color far off; and that to a man looking at its smoked part it might seem colorless, while to a man looking upward to it, it would seem green. All this may explain why the schooner's lights were not seen, though it is not necessary the steam-boat should do so. The libel alleges that the schooner was "duly lighted;" that her green and red lights were "brightly burning;" that she "had all proper, sufficient, and lawful lights set and burning, as aforesaid." The burden is on her to show this, and she has not done so.

The steam-boat, on discovering the schooner, did all that it was incumbent on her to do. On the view she had of the light she had a right to think it was on a vessel going the same way. She slowed and ported so as to go by on what she reasonably believed to be the starboard hand of the schooner. Rule 21 in § 4233 provides that every steam-vessel, when approaching another vessel, so as to involve risk of collision, shall slacken her speed, or, if necessary, stop and reverse. She did slacken her speed, and it did not then appear to be necessary to stop or to reverse. Afterwards, as soon as danger of collision appeared from the sudden coming of the sails of the schooner into view from the light thrown on them by the head-light of the steam-boat, the latter stopped and backed, and backed strong, and her wheel was put hard a-port. She could do no otherwise and no more.

There is another point in the case. It is provided by section 4234 of the Revised Statutes that every sail-vessel shall, "on the approach of any steam-vessel during the night-time, show a lighted torch upon that point or quarter to which such steam-vessel shall be approaching." The schooner saw the approach of the steam-boat from a long distance, and failed to show the lighted torch. This

neglect is set up in the answer. There was a torch in the cabin of the schooner, ready for use and easily accessible. The mate of the schooner, who was at the wheel, did not know that there was a torch on board. The master did. He states that he never saw a torch used. It is quite clear that the torch could have been got out and lighted and used in time to have prevented the collision. A mistaken idea seems to have been entertained by the master and the mate that a lighted torch was to be used only when a steam-vessel was approaching from behind. This steam-boat was not approaching from behind, if the testimony of those on the schooner is to be believed. But the statute has no such meaning. The lighted torch is to be exhibited to the approaching steam-vessel, from whatever direction she is coming, and is to be shown, on the point or quarter to which she is approaching. It was clearly a fault in the schooner, contributing to the collision, that she did not exhibit a torch-light. *The Eleanora*, 17 Blatchf. C. C. 88. The steam-boat had a right to rely on the exhibition of a torch-light, if the schooner was in such a position that the steam-boat was approaching her, and the absence of the torch-light has an important effect in determining that the steam-boat was not negligent, and observed due caution.

The libel is dismissed, with $121.25 costs of the district court as taxed, and costs to the claimant in this court.

NOTE. Under Revised Statutes, § 4234, the failure to exhibit a torch-light or flash-light is a fault in case of a collision. *The J. H. Starin*, 2 FED. REP. 100; *The Alabama*, 10 FED. REP. 394. The provision of the statute is sufficiently broad to require such light to be exhibited to a steamer coming up astern, (*The Sarmatian*, 2 FED. REP. 911,) but is not confined to cases where a steamer is approaching from astern. *The Narragansett*, 3 FED. REP. 251. It must be exhibited whether the steamer be approaching from forward or abaft the beam. *The Samuel H. Crawford* and *The Niagara*, 6 FED. REP. 906. The failure to exhibit a torch-light does not render the vessel so failing liable to damages, unless such failure tended to produce the collision. *The Margaret* v. *The C. Whiting*, 3 FED. REP. 870. So a failure would be no fault, if of no avail for want of a proper lookout on the steamer. *The Steamship Oder*, 8 FED. REP. 172.—[ED.