## The Amboy.

## The Transfer No. 2.

*(District Court, S. D. New York.* November 28, 1884.)

COLLISION—DEFECTIVE LIGHTS—LOOKOUT—CONFLICTING EVIDENCE.

Where a collision occurred between the steam-boats A. and T. No. 2, in the East river, near Blackwell's island, the former going up and the latter down, and the pilot of the latter, seeing the A.'s white lights, but no colored light, supposed the A. was going the same way with him, and starboarded so as to pass to the left, and thereby came in collision, *held,* upon much contradictory evidence in regard to the A.'s colored lights, that, though burning, they were defective, so as not to be visible at the distance they ought to have been visible. It appearing, also, that T. No. 2 had no lookout except the pilot, and that with a suitable watch the mistake as to the direction of the A. would have been discovered in time to avoid her, though her colored lights were not seen, *held,* that the other tug was also in fault. In great conflict of evidence as to lights being visible, the contemporaneous evidence, afforded by the acts of those in charge of vessels, who, looking for colored lights, can see none, and maneuver their vessels accordingly, is entitled to great weight.

In Admiralty.

*J. A. Hyland,* for libelant.

*Wilcox, Adams & Macklin,* for the Amboy.

*Benedict, Taft & Benedict,* for the Transfer No. 2.

BROWN, J. The collision in this case, in some of its aspects, resembles that of *Briggs* v. *Day,* 21 FED. REP. 727. In this case, as in that, the pilot of Transfer No. 2, which was coming down the East

river, claims to have been misled as to the direction of the Amboy—which was going up the river—in consequence of seeing the latter's white lights nearly directly ahead, no colored lights being visible, and for this reason he supposed that the Amboy was going down the river, like himself. Nothing can be more contradictory or embarrassing than the evidence in this case upon the question whether the Amboy's colored lights were visible as they ought to have been. I am unwilling to hold so many witnesses on either side guilty of a direct fabrication of testimony. The most probable solution that will avoid that result, as regards the witnesses on the one side or the other, is the supposition that the colored lights, though burning, had become dim, or the glasses obscured, so that the lights could not be seen at the required distance. I think the colored lights were burning; but one of the Amboy's witnesses said the lights sometimes become dim by morning; and there is too much concurrence of testimony that these colored lights could not be seen at the requisite distance, and where they ought to have been seen, and too many different hypotheses are required to explain the failure of so many different persons, under different circumstances, to see the Amboy's colored lights,—if they were in fact visible,—to render probable any other cause than that which I have stated. The purpose of lights is to be seen. If they do not fulfill that office to ordinary observation, the vessel must be held in fault; and when several witnesses concur in testifying that the lights could not be seen in a situation where they ought to have been seen, and, more especially, where it appears that the persons in charge of another vessel maneuvered their own vessel in reference to the other, and that upon looking specially for colored lights could not see any, and actually navigated their own vessel in a way that would have been highly improbable had the colored lights been visible,—the inference seems irresistible, and this court has often held, that there must have been some defect in the lights that ought to have been seen, but were not seen. *The State of Alabama,* 17 FED. REP. 847; *The Alaska, ante,* 548; *The Johanne Auguste,* 21 FED. REP. 134, 140; *The Narragansett,* 20 Blatchf. 87; S. C. 11 FED. REP. 918; *The Sam Weller,* 5 Ben. 293.

Without discussing the details of the evidence, all of which I have carefully considered, I must find that as the pilot of the Amboy saw the three white lights more than a half mile distant, looked carefully for colored lights without discovering any, and navigated his vessel accordingly, going to the left, and that without signals, both highly improbable if any colored lights had been visible, but natural, if he supposed he was overtaking the Amboy; and as this evidence is supported by much other evidence in the case, it must be accepted as proof of defects in the Amboy's colored lights. For this reason I must hold the Amboy in fault. Transfer No. 2 must also be held in fault, as in the case of *Day* v. *The H. W. Hills,* 21 FED. REP. 727.

(1) She had no proper lookout besides the pilot, (*The Ant,* 10 FED.

Rep. 294.) Though the pilot, on looking carefully for colored lights, could see none, yet an ordinary and constant watch of the Amboy's course by a proper lookout from the time the Amboy's white lights were seen, could not, I think, have failed to apprise No. 2 that the Amboy was coming up stream in ample time to have avoided her. The absence of the lookout was therefore material. Transfer No. 2 was also in fault (2) for not seasonably stopping and backing after she had sufficient opportunity to see that the Amboy was not going the same way, though her colored lights were not seen. The strong reflector on the Amboy's bow ought not to have been mistaken for a stern light, which is occasionally carried, but is not required. The Amboy's one whistle was not answered promptly, and the reason assigned by the pilot of Transfer No. 2 for not answering, viz., that he could not tell which way the Amboy was going, was of itself a sufficient reason for his stopping at once. This one whistle was not given immediately before No. 2's alarm whistles were given, but some time previous. The Amboy approached very near to Blackwell's island, and I can see no excuse for Transfer No. 2 in following her up in that direction until a collision happened very near the shore. I am satisfied that there were circumstances sufficient to put No. 2 on timely guard; and that, had due caution and due judgment been exercised, with a proper lookout on No. 2 in regard to the movements of the Amboy, even though the latter's colored lights were not visible, and had her own engines been reversed when she ought to have perceived that the Amboy was going the same way with her, the collision would have been avoided.

A decree must therefore be entered against both vessels, with costs, and an order of reference taken to compute the damages.