THE WESTFIELD.[1]

ROFF et al. v. THE WESTFIELD.

(*District Court, S. D. New York.* April 17, 1889.)

1. COLLISION—VESSEL AT ANCHOR.
    Where a steam-boat is pursuing her usual course, at her usual speed, by night, in ordinary weather, and runs into a vessel lying at anchor without an anchor light, the steam-boat is not liable, if she reversed as soon as the other was visible.

2. SAME—EVIDENCE—OFFICERS—CREDIBILITY.
    Where competent officers are in their places, attentive to their duties, and navigating their vessel in accordance with what can be seen, their testimony that a light was not perceived, which must have been seen if properly burning, is entitled to superior credit, if not outweighed by other circumstances.

In Admiralty. Libel for damages by collision.

*Carter, Rollins & Ledyard,* for libelants.

*Macfarland, Boardman & Platt,* for claimants.

BROWN, J. On the night of October 18, 1887, at a little after midnight, while the steam ferry-boat Westfield, running between the Battery and Staten Island, was on her way from St. George's to Stapleton, to lie up for the night, and pursuing her usual course, she came in collision with the libelant's pilot-boat, the Lillie, some 200 or 300 yards off the Corinthian Yacht Club dock, at Tompkinsville, and a little to the southward of it, doing considerable damage to the pilot-boat, for which the above libel was filed.

The preponderance of proof shows that at the time the Westfield came along there was no light burning upon the Lillie. There was a fishing smack showing a light from 50 to 100 feet to the eastward of the Lillie; others nearer the shore; and still others some distance to the southward or south-west of her. The night was dark, and somewhat drizzly. There was a lookout on deck, at the front of the covered passage. The master, at the wheel-house, was watchful and attentive to his duty, engaged wholly in observing what was ahead of him. No light was seen by either, or by the quartermaster at the wheel; and the pilot-boat was only discovered a short distance before she was reached, being seen and reported by the lookout at the same time, or nearly at the same time, that she was seen by the master and quartermaster. The bells were immediately rung to stop and back, but the collision took place after the engine was reversed, and before the completion of a single revolution. Where competent officers are in their places, attentive to their duties, and navigating their vessel according to what can be seen, their testimony that no light was seen, which ought to have been seen and must have been seen if properly burning, is entitled to superior credit, if their evidence is not outweighed by other circumstances. *The Narragansett,* 20 Blatchf. 87, 11 Fed. Rep. 918; *The Royal Arch,* 22 Fed. Rep. 457;

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

*The Isaac Bell,* 9 Fed. Rep. 842; *The State of Alabama,* 17 Fed. Rep. 847, 862; *The Johanne Auguste,* 21 Fed. Rep. 134, 140; *The Drew,* 35 Fed. Rep. 791; *The Henry Warner,* 29 Fed. Rep. 601. Though the place of anchorage was not an unusual one, it was not, as in the case of *The Drew, supra,* a place where steamers were unaccustomed to come. On the contrary, it was the daily usual course of the Westfield. The necessity for the Lillie to show a light was therefore imperative. This is not denied. The evidence indicates that a lantern had been previously hung up, but the light must have gone out before the Westfield came along. I cannot impute any blame to the Westfield for taking her usual course to Stapleton, or in not anticipating the presence of the pilot-boat when no light was seen. Nor is there sufficient evidence to satisfy me that the Lillie, without a light, could have been seen from the Westfield any sooner than she was seen; or that the Westfield could have taken any more effective means to avoid her after seeing her. The Westfield had a right to pursue her usual course to her landing; and I do not see in this case any circumstances that required her, as a matter of prudent navigation, to abate her ordinary somewhat reduced speed, when going to lie up, simply upon the risk that there might be in her path a vessel that, in violation of the rules, exhibited no anchor light. In her usual course she had a right to go at her usual reduced speed. In not maintaining a light the risk rested wholly upon the Lillie, and she must accordingly bear the blame. In the cases of *Steam-Ship Co.* v. *Calderwood,* 19 How. 241, and *The Drew,* 35 Fed. Rep. 789, the steamer was held liable for being much out of her proper and usual track. In *The Isaac Bell,* 9 Fed. Rep. 842, where the steamer was not out of her usual course, she was acquitted, and that judgment was affirmed in this circuit. This case is substantially like the latter. The libel is dismissed, with costs.