### THE CIRCASSIA.[1]

### THE DAYLIGHT.

BARROW STEAMSHIP CO. v. THE DAYLIGHT. ARMSTRONG et al. v. THE CIRCASSIA. FORSTER v. THE DAYLIGHT and THE CIRCASSIA.

(District Court, S. D. New York. April 13, 1893.)

COLLISION—STEAM AND SAIL—OBSCURED LIGHTS—CHANGE OF COURSE IN EXTREMIS A FAULT—STEAMER NOT REVERSING NO FAULT.

A steamer and schooner met by night at sea, the steamer on a course about E., the schooner sailing S. W. The schooner saw the white and red lights of the steamer on her starboard bow some two miles off; but the schooner's fore staysail, as found on conflicting evidence, obscured her green light, so that the steamer saw nothing of the schooner until the ves-

[1]Reported by E. G. Benedict, Esq., of the New York bar.
v.55F.no.1—8

sels were within a quarter of a mile of each other. The schooner then showed a torch, and her green light was about the same time seen by the steamer, which stopped her engines and hard a-starboarded, bringing the green light on her starboard bow; but the schooner then ported, and the vessels came together some two or three points from head and head. *Held,* that the schooner was solely in fault for the collision, her faults consisting in the obscuration of her green light and her change of course; that her irregular exhibition of the torch and change of course—the latter the immediate cause of collision—might have been treated as committed in extremis, had not their apparent necessity been brought about by the primary fault of the obscuring of her colored light; and that the steamer was not negligent in failing to observe the schooner earlier; and that her navigation, after making the light, was proper; and that her not reversing on starboarding was not an error, as she would thereby have rendered inoperative the effect of her altered wheel.

In Admiralty. Cross libels for collision. Libel by cargo owner for damage to cargo occasioned by collision.

Wing, Shoudy & Putnam, for the Circassia.
Owen, Gray & Sturgis, for the Daylight.
Sidney Chubb, for Charles Forster.

BROWN, District Judge. About 9:45 P. M. of September 26, 1891, the steamship Circassia, bound east for Glasgow, and the Daylight, bound from the northeast for Philadelphia, and on a course of about southwest came in collision at a point on the high seas about 75 or 80 miles east of Sandy Hook. The collision was nearly head on; the stem of the schooner struck the hawse pipe on the steamer's starboard bow at an angle of from one to three points, about ten feet aft of the stem, and tore a large hole through the steamer's plates, penetrating several feet into the ship; and the schooner's stem was carried away. Both vessels afterwards arrived in New York, and their owners filed the above libel and cross libel respectively. The libel of Forster is for damage sustained by the injury to a consignment of apples on board the Circassia, through the delay in delivering them at Glasgow, in consequence of the detention caused by the collision.

On the main facts there is less dispute than usually arises in collision causes. The weather was moderate; the night, good for seeing lights. The steamer, an iron ship, 400 feet long by 42 feet beam, had been previously sailing on a compass course of E. ¾ S. The schooner, 175 feet long, had been sailing on a S. W. course on her port tack, the wind being one or two points aft of the beam, not far from E. S. E. The steamer was going at the rate of about 11 knots; the schooner, as her witnesses say, about 6 knots; but the distances run between the times noted by her log and collision indicate that she was going at the rate of at least 9 knots.

The evidence leaves no doubt that the steamer's white light and red light were seen about two points off the schooner's starboard bow at a distance of two miles or more. After this had been observed for some time without much change of bearing, a torch light was exhibited on the schooner for the purpose of attracting the steamer's attention. This was waived up and down three or four times during an interval probably of some 20 seconds. The

torch light was the first that was seen of the schooner on board the steamer. When the torch light ceased, the schooner's green light was dimly seen for the first time, as stated by several of the witnesses for the steamer, about a point on the port bow of the latter. When the torch light was first seen, the schooner was supposed by the officers of the steamer to be a pilot boat. As soon as the green light was seen, the engines were stopped and her wheel put hard a-starboard. Soon afterwards the schooner's green light was brought on the steamer's starboard bow; but at once the red light, also was seen, as well as the loom of the schooner; whereupon the engines of the steamer were reversed, probably less than half a minute before collision, but too late to avoid it.

In behalf of the steamer it is contended that the green light of the schooner, which was placed on the fore shrouds about 14 feet above deck, and ranged about 3 feet inside of the rail, was wholly or partially obscured, so that it could not be seen at a sufficient distance; that the steamer was misled by the torch light, which is not any longer allowed to be exhibited except by a vessel overtaken; and that the schooner's change of course was a fault which was the immediate cause of the collision.

For the schooner it is contended that her green light was properly visible; that the torch light was shown and the change of course made in extremis, and in consequence of the negligence of the steamer to observe the schooner's green light, or to take any timely steps to keep out of her way.

There can be no doubt that the green light of the schooner, which ought to have been seen a little on the port bow of the steamer at least one or two miles distant, was not seen until the schooner was near, and after she had exhibited her flash light to attract the steamer's attention. Nor is there any doubt that the green light was a proper and sufficient light; for, when near, it was observed to be burning brightly. If it was not obscured by the staysail, then the officers and lookout of the steamer were plainly negligent, and would be held in fault for taking no steps to keep out of the schooner's way before the vessels had come into such close proximity as to excite alarm and render proper extraordinary means for calling attention to her presence. If the green light was obscured, then there was nothing to indicate the near approach of the schooner, until after the torch light had expired, when the two vessels were probably not much above a quarter of a mile apart.

There were five persons upon the steamer who were in a position to see the schooner's green light, four of whom ought to have seen it, if it was visible before the torch light was exhibited. The interval was a considerable one. The night was not bad for seeing lights; and if it was visible, nothing but simple negligence could have prevented its being seen. There is nothing to indicate that the officers were not reasonably vigilant and attentive to their duties. Under such circumstances, failure to see the light has been frequently held to be strong evidence that the light was not visible; and this ought to be deemed sufficient, where, as in this case, there appears to have been a reasonable and sufficient cause for the ob-

scuration of the light. The length of the fore staysail boom and the spread of the staysail were such that with a list of the vessel to starboard and the bellying of the sail, the green light might have been obscured, when the vessels were in such relative positions as these. The only check to the obvious tendency to obscure the light would be scant play allowed the staysail sheet. But even as the evidence stands upon that point, it does not seem to me that this would necessarily prevent obscuration. That the schooner must have had a considerable list, being light loaded, is to be inferred from the fact that there was a good breeze, and that her speed, as shown from her log, and her different positions at different hours, must have been about nine knots. Under these circumstances, the reasonable conclusion on this point seems to me to be that the green light was not seen because obscured; and that when first visible it was dim, being also possibly partly thrown out of position by the natural slack of the lee fore rigging in which it was fixed. The Narragansett, 20 Blatchf. 87, 11 Fed. Rep. 918; The Belgenland, 5 Fed. Rep. 86; The Alaska, 22 Fed. Rep. 548; The Johanne Auguste, 21 Fed. Rep. 134; The Monmouthshire, 44 Fed. Rep. 697. This conclusion derives some further confirmation from the natural improbability that the master would change his course, as this master did, when approaching a steamer so as to show his red light to her red, unless he suspected that his green light could not be seen.

Notwithstanding this primary fault of the schooner, I am satisfied that the collision would have been avoided by the steamer's hard a-starboard wheel together with her stop as soon as the schooner's dim green light was observed, probably a quarter of a mile away, had not the schooner at about the same time ported her own wheel, as above stated. The mate of the schooner, who exhibited the torch light, says that the order to port was given just before the flash light went out. The other testimony indicates that it was just afterwards; and I am inclined to think that the latter is correct, or at least that the order to port was not given long enough before the flash light went out to make any change in the schooner's heading; for, if any such change had been made so soon, her green light would have been still more shut out, and would not have been visible to those on the steamer after the torch light went out. In other respects this difference is of no importance. As soon as the green light was seen, as I have said, the steamer's helm was put hard a-starboard. She changed about 2½ points to port; while the schooner, under her hard aport wheel, must have changed about four or five points, in order to bring her angle of collision to about three points, as testified to by her captain. This angle agrees with the probabilities derived from the wound, and from the fact that her green light was shut out just before collision. As the schooner was not much over 150 feet on the water line, and the steamer nearly 400 feet, she could not fail to change her heading more than twice as rapidly as the steamer. Striking the steamer as she did upon her starboard bow, at an angle of at least from two to three points, and after a change of at least four points

in her own course, it is evident that the change of her course by the schooner was the immediate cause that brought about collision.

If there had been no previous fault or neglect of the rules on the part of the schooner, this change of course, having been ordered when the two vessels were probably not much, if any, over a quarter of a mile apart, and therefore in the apprehension of immediate collision, might have been treated as committed in extremis, and as not involving the schooner in fault; and the same observation applies to the irregular exhibition of the torch light. But the schooner is precluded from urging this defense in the present case, because the occasion for the torch light, and the supposed necessity of her change of course, were brought about, as I find, not by any fault of the steamer, but from the fault of the schooner herself, in the obscuration of her green light. In consequence of this fault, the steamer was in no way to blame for not seeing the schooner earlier, or for not sooner taking measures to keep out of the way, and to avoid causing the alarm under which the schooner acted in exhibiting the torch light and in changing her course. And as these acts were merely the results of the schooner's previous fault, she cannot be exonerated therefor. The Elizabeth Jones, 112 U. S. 514, 5 Sup. Ct. Rep. 468; The Blue Jacket, 144 U. S. 371, 391, 12 Sup. Ct. Rep. 711.

From the time the green light was visible, I find that the management of the steamer was without fault. It was apparently essential that her heading should be changed to port. She made this change by stopping her engine, and putting her wheel hard a-starboard. Had she also reversed at once, no such change of heading could have been made; because her starboard helm on reversal would have been inoperative; and a worse collision would undoubtedly have followed. The situation was critical from the moment the green light was seen; and critical, as I must find, by the schooner's fault. It follows that the libel against the schooner must be sustained, and that against the steamship must be dismissed.

As respects the libel of Forster, for damages through the delay in delivery of the cargo of apples, there seems to be sufficient evidence of some damage. I must, therefore, allow a decree in his favor as against the Daylight, but with a dismissal as respects the Circassia.

Decrees may be entered accordingly.