### THE PIERRE CORNEILLE.

### THE LARNACA.

(District Court, N. D. California. December 7, 1904.)

Nos. 11,310, 11,318.

1. COLLISION—SAILING VESSELS—RIGHT OF VESSEL CLOSE-HAULED TO KEEP HER COURSE.

A vessel sailing close-hauled is justified in maintaining her course as against an approaching vessel sailing free, in the absence of some clear indication that the latter will fail in her duty to keep out of the way.

2. SAME—FAILURE TO MAINTAIN LIGHTS.

A collision occurred in the night just outside the entrance to the Bay of San Francisco between the ship Larnaca outward bound, and sailing

¶ 1. See Collision, vol. 10, Cent. Dig. §§ 25, 37.

close-hauled, and the bark Pierre Corneille, coming in, and sailing free. The Corneille had a competent lookout, who, as well as the master and pilot, testified that they saw the Larnaca as a dark object when half a mile distant, and examined her through a glass, but could see no side lights, and could not make out her course, but supposed her to be inward bound. The starboard side light should have been seen if it had been burning. The Corneille changed her course to starboard, which brought her directly across the course of the Larnaca, and caused the collision; an act which would have been most improbable if they could have seen the Larnaca's lights. *Held* that, notwithstanding contrary testimony from officers and crew of the Larnaca, it must be found that the light was not burning, or was too dim to be seen at any distance, and that she was chargeable with fault for the collision.

In Admiralty. Cross-suits for collision.

Page, McCutchen & Knight, for libelant Giles.

Andros & Hengstler, for libelants Le Blond et al.

DE HAVEN, District Judge. These are cross-libels to recover damages resulting from a collision between the ship Larnaca and the bark Pierre Corneille. In Giles v. The Pierre Corneille the libel charges that the collision was caused solely by the fault of those in charge of the latter vessel, in this: that at and before the collision the Pierre Corneille was running free, and the Larnaca was sailing close-hauled, and that the former did not keep out of the way of the latter, as required by law. To this the owners of the Pierre Corneille answered, and in their libel against the Larnaca allege, that the collision was brought about solely by the negligence of those in charge of the Larnaca, in this: First, that the Larnaca did not exhibit the lights required by the sailing regulations of the act of March 3, 1885 (chapter 354, 23 Stat. 438–439), then in force; second, that when the master of the Larnaca saw that a collision was imminent he neglected to take precautions to avoid such collision, made necessary by the special circumstances of the case, and as required by article 24 of the same act of Congress. The vessels collided between 1 and 2 o'clock on the morning of November 11, 1896, just outside the bay of San Francisco. The night was dark, but clear. There was a light breeze, and the sea was calm. The Pierre Corneille was running free coming into the harbor, and the Larnaca was close-hauled on the starboard tack, sailing away from the port. The latter was originally bound for San Francisco, but a short time before the collision her master received orders through a pilot, directing him to wear his ship and proceed to Portland. The Pierre Corneille's pilot, in going out to her, passed the Larnaca, and noticed that the latter vessel was hove to, and that a pilot was boarding her, and supposed she was inward bound.

1. The evidence shows that the Larnaca held on to her course, although she observed the lights of the Pierre Corneille, and was thus informed that she was approaching on a course involving danger of collision. But the failure of the Larnaca to change her course cannot be imputed to her as a fault. The situation was not such as to clearly indicate to her master that the Pierre Corneille would fail in her duty of keeping out of the way, and in the absence of some clear indication of such failure of duty the Larnaca was justified in maintaining her

course. The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, 40 L. Ed. 771.

2. There is a marked conflict in the evidence upon the question whether the Larnaca before and at the time of the collision exhibited the lights required by law. The burden of proving that such lights were not exhibited is upon the Pierre Corneille. It satisfactorily appears that there was a competent lookout properly stationed on the Pierre Corneille, and he testified that the Larnaca was first discovered as a dark object on the water from one point to one point and a half on the port bow, and apparently half a mile distant, and that he saw no lights on her. The master and pilot of the Pierre Corneille saw her at about the same time, and their testimony is, in substance, that they both observed her through glasses; that they did not see either of her side lights, and could not determine in what direction she was moving until it was too late to take effectual measures to prevent the collision. They also testified that they were able at the time to see the lights of different lighthouses within visual range, and that, if the lights of the Larnaca had been set, and burning properly, they would have seen them; and it is clear from all of the testimony in the case that if lights were in fact exhibited upon the Larnaca they should have been observed by those on board of the Pierre Corneille. The master of the Larnaca, her lookout, second mate, and some of her seamen testify with great positiveness that her lights were set and burning clear and bright from the time the Pierre Corneille was first seen until the collision. In view of the sharp conflict in the evidence, it is difficult to reach any certain conclusion as to the actual fact in relation to the lights upon the Larnaca, whether they were exhibited or not; but after careful consideration it seems to me the finding should be in favor of the Pierre Corneille. She was coming into the harbor, and was under command of an experienced pilot, and it is not at all probable that she would have been navigated in the way she was if the starboard light of the Larnaca had been seen, for with that light in view the master and pilot of the Pierre Corneille would have known that porting her wheel, as they did, and changing her course to starboard, would make a collision inevitable. But they did not see this light, and the most reasonable conclusion is that, if set at all, it was not supplied with sufficient oil, or for some other reason had become so dim that it was not visible for any distance. The language of Brown, J., in the case of The Amboy (D. C.) 22 Fed. 555, is particularly applicable to the question now under discussion, and may well be quoted in concluding this opinion:

"The purpose of lights is to be seen. If they do not fulfill that office to ordinary observation, the vessel must be held in fault; and when several witnesses concur in testifying that the lights could not be seen in a situation where they ought to have been seen, and, more especially, where it appears that the persons in charge of another vessel maneuvered their own vessel in reference to the other, and that, upon looking specially for colored lights, they could not see any, and actually navigated their own vessel in a way that would have been highly improbable had the colored lights been visible, the inference seems irresistible, and this court has often held, that there must have been some defect in the lights that ought to have been seen, but was not seen. The State of Alabama (D. C.) 17 Fed. 847; The Alaska (D. C.) 22 Fed. 548; The Johanne Auguste (D. C.) 21 Fed. 134, 140; The Narra-

gansett, 20 Blatchf. 87, 11 Fed. 918; The Sam Weler, 5 Ben. 293, Fed. Cas. No. 12,290."

It follows from what has been said that there must be a decree dismissing the libel of Giles v. The Pierre Corneille, and a decree in favor of the libelants in the case of Le Blond et al. v. The Larnaca, and the latter case will be referred to United States Commissioner Manley, to ascertain and report the damages.